# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE M. WEISWASSER, | ) 1:08-CV-01678 AWI JMD HC |
| Petitioner, | ) <br> ) FINDING AND RECOMMENDATION <br> ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS <br> ) |
| JAMES D. HARTLEY, | ) <br> ) |
| Respondent. | ) |

Lawrence M. Weiswasser ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1987 conviction in the Los Angeles County Superior Court. (Pet. at 2). Petitioner is serving a sentence of twenty seven years to life for a conviction of first degree murder with a firearm and a six month concurrent sentence for displaying a firearm. (Id).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before on January 4, 2007. (*See* Pet. Ex. 1, Transcript of Parole Hearing, at 1).

1    Petitioner challenged his parole denial in state court, initially submitting a writ of habeas

2    corpus with the Los Angeles County Superior Court.  (*See* Answer Ex. A).  The Los Angeles County

3    Superior Court issued a reasoned decision rejecting Petitioner's claims on October 26, 2007.  (Pet.

4    Ex. 14).

5    Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal

6    and the California Supreme Court.  (*See* Answer Exs. B, C).  Those petitions were summarily denied

7    by the respective courts.  (*See* Pet. Exs. 15, 16).

8    On November 3, 2008, Petitioner filed the instant federal petition for writ of habeas corpus

9    Respondent filed a response to the petition on March 16, 2009.[1]  Petitioner filed a reply to

10   Respondent's answer on April 30, 2009.

11   **FACTUAL BACKGROUND**

12   The facts of the commitment offense were considered by the Board in determining whether

13   Petitioner was suitable for parole and are thus relevant to the Court's inquiry into whether the State

14   court's decision upholding the Board's decision was objectively unreasonable.  *See* Cal. Code Regs.,

15   tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense taken from

16   the California Court of Appeal's decision denying Petitioner's direct appeal of his conviction:

17           On August 27th, 1985, at about 2:00 or 3:00 in the afternoon, 11 year old
18   Christian Mader saw [Petitioner] park a car on Amelia Street, in San Pedro just
     around the corner from Maxine's residence. [Petitioner] wore a hat and carried a
     plastic market bag containing what looked like a shoebox [sic].  Sometime after 3:00
19   p.m. Shirley Samuelson went to Maxine's home.  Samuelson had accompanied
     Maxine on numerous family court appearances and knew [Petitioner].  When no one
20   answered the front door, Samuelson went around the corner of the house through the
     side gate in the grape stake fence.  As Samuelson passed through overgrown shrubs,
21   which hid the gate from street view, she saw [Petitioner] standing in front of the gate.
     Samuelson was startled by [Petitioner]'s presence and exclaimed, "Oh, my God."
22   [Petitioner] turned toward her with a gun in his hand and pointed it at her but said
     nothing.  Samuelson turned to leave and was almost to the front of the house when
23   she heard a shot. [¶]
             David Loseman, Maxine's neighbor , heard the shot and came out of his house.
24   Loseman's wife had left the house just before 3:00 p.m. and Loseman heard the shots
     20 or 25 minutes later.  Samuelson screamed, "It's Lawrence Weiswasser."
25   [Petitioner] ran from the side of the house carrying the gun and plastic bad.  He put
     the gun in the bag, cut across the lawn, and went to Amelia Street where he turned. [¶]
26           The shot fired by [Petitioner] went through a knothole in the gate and struck

27   _____

28   [1]Respondent admits that Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 2).

1    Maxine in the orbit of the right eye, causing her death.  There was gunshot powder
     residue in the knothole and the area around it.  Splinters protruded from the other side
2    of the knothole.  Police officers arrested [Petitioner] as he returned home that
     evening.  A .22 caliber casing found at the base of the gate and a .22 caliber round
3    found in [Petitioner]'s pocket both had been in the chamber of the same
     semi-automatic weapon.  When arrested, [Petitioner] was quit, had no unusual odor
4    on his breath, and did not exhibit any unusual conduct.  Officer's [sic] found a .38
     caliber revolver at [Petitioner]'s home.  They found no .22 caliber weapons.

5

6    (Pet. Ex. 1, Transcript of Parole Hearing, at 14-16)..

7        Petitioner explained his motivation for the crime, noting that he had been under immense

8    stress resulting from a failed practice, falling behind on alimony payments, and the threat of jail time

9    resulting from the failure to pay the past due alimony payments.  (Id. at 16-18).

10                                       **DISCUSSION**

11   **I.    Jurisdiction**

12       A person in custody pursuant to the judgment of a State court may petition a district court for

13   relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

14   treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

15   U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

16   the United States Constitution stemming from the Board's denial of parole.  Petitioner initiated this

17   action and the denial of parole occurred when Petitioner was incarcerated at Corcoran State Prison,

18   which is located in Kings County.  (Pet. at 2).  As Kings County falls within this judicial district, 28

19   U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See*

20   28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the

21   district court where the petitioner is currently in custody or the district court in which a State court

22   convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

23   **II.    ADEPA Standard of Review**

24       All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and

25   Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v.*

26   *Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert.*

27   *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th

28   Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320

1   (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was

2   filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S.

3   63, 70 (2003).  While Petitioner does not challenge his underlying conviction, the fact that

4   Petitioner's custody arises from a State court judgment renders section 2254 the exclusive vehicle for

5   Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127

6   (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that §

7   2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment

8   even though he is challenging the denial of his parole).

9       Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner]

10  demonstrates that the State court decision denying relief was 'contrary to, or involved an

11  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

12  the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. §

13  2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first

14  decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the

15  United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is

16  "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of

17  [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting

18  *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is

19  the governing legal principle or principles set forth by the Supreme Court at the time the State court

20  renders its decision." *Id.*

21      Finally, this Court must consider whether the State court's decision was "contrary to, or

22  involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72,

23  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

24  the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on

25  a question of law or if the State court decides a case differently than [the] Court has on a set of

26  materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

27  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State

28  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application

1    of clearly established federal law.  *Id*.

2         Here, the Los Angeles County Superior Court, the California Court of Appeal, and the

3    California Supreme Court all adjudicated Petitioner's claims.  (*See* Pet. Exs. 14, 15, 16).  As the

4    California Court of Appeal and California Supreme Court issued summary denials of Petitioner's

5    claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that

6    of the Los Angeles County Superior Court.[2]  *See Ylst v. Nunnemaker*, 501 U.S. at 804.

7    **III.    Review of Petitioner's Claim**

8         The dispositive inquiry before this Court is whether the last reasoned decision by the State

9    court was an unreasonable application of clearly established federal law.  *See Williams*, 529 U.S. at

10   407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's

11   determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).  Here,

12   Petitioner raises the following five grounds for relief, alleging that: (1) the Board violated his right to

13   due process of the law as his commitment offense was not evidence of his unsuitability; (2) the

14   Board's characterization of the crime was erroneous; (3) the Board's denial of parole based primarily

15   on the commitment offense violate his right to due process of the law; (4) the Board's misinterpreted

16   California law by relying primarily on the commitment offense; and (5) the Board failed to give

17   individualized consideration, thereby violating his due process rights.

18        **A.  Grounds One through Four**

19        Petitioner's first four claims for relief revolve around the Board's reliance on his

20   commitment offense.  Specifically, Petitioner alleges in his first ground for relief that the Board's

21   reliance on his commitment offense violates his right to due process of the law as the commitment

22   offense was not particularly egregious and therefore does not evidence unsuitability.  (Pet. at 5E-5F).

23   In a related second claim, Petitioner contends that the Board mischaracterized the commitment

24   offense as having been committed in an especially cruel, calculated, and dispassionate manner.  (Id.

25

26        [2]In denying Petitioner's application for relief, the California Court of Appeal merely cited to *In re Dannenberg*, 34
     Cal.4th 1061, 1070-1071 (Cal. 2005) and *In re Rosenkrantz*, 29 Cal.4th 616 (Cal. 2002) without explaining or addressing
27   the reasons for denying the petition.  (Answer Ex. 15).  As such a decision does not provide an adequate basis for the Court
     to determine if the appellate court unreasonably applied clearly established federal law, the Court looks through the appellate
28   court's ambiguous decision to the last reasoned decision provided by the State courts.  *See Bailey*, 339 F.3d at 1112-1113.

1    at 5F-5H).  In his third ground for relief, Petitioner contends that the Board's reliance on the

2    commitment offense violates his right to due process of the law.  Petitioner's fourth ground for relief

3    contends that the Board misapplied California law, and thus violated his due process rights, by

4    basing the decision to deny parole primarily on the nature of the commitment offense.[3]

5           Petitioner's first four grounds for relief center around violations of his due process rights.

6    The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits

7    states from depriving persons of protected liberty interests without due process of law.  *See e.g.,*

8    *Sass*, 461 F.3d at 1127.   A court analyzes a "due process claim in two steps: 'the first asks whether

9    there exists a liberty or property interest which has been interfered with by the State; the second

10   examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"

11   *Id*. (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) *partially*

12   *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

13          As noted *infra*, the main inquiry facing a federal habeas court is whether the state court

14   unreasonably applied clearly established federal law.  Here, Respondents dispute whether

15   Petitioner's due process claims are grounded in clearly established federal law.  The main thrust of

16   Respondent's argument is that (1) clearly established federal law does not vest Petitioner with a

17   liberty interest in parole and (2) even if such a right existed, Supreme Court precedent only afford

18   Petitioner certain procedural protections, which does not encompass having some evidence support

19   the Board's decision.  (Answer at 3).  Respondent acknowledges that existing Ninth Circuit authority

20   has rejected such an argument.  (Id. at n.1).  The Ninth Circuit has held that a prisoner possesses a

21   liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a

22   presumption "that parole release will be granted when or unless certain designated findings are

23   made, and thereby give rise to a constitutional liberty interest.'"  *McQuillion v. Duncan*, 306 F.3d

24

25          [3]The Court initially notes that Petitioner's fourth claim for relief is not by itself a viable ground for relief as
26   misapplication of California law is not a sufficient basis for habeas corpus relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68
     (1991) (stating, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.
27   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or
     treaties of the United States.").  However, *Estelle* does not hold, as Respondent seemingly contends, that state law may not
28   inform a federal habeas court's determination of whether a petitioner's constitutional rights were violated by the state court's
     action.  As discussed *supra*, California law is applicable to determination whether Petitioner's rights were violated.

895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language,[4] thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that if Petitioner possesses a liberty interest, due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). Respondent denies that the Board's denial of parole is required to be supported by some evidence in the record. (Id). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 5-6).

Respondent is correct that a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1399 (9th Cir. 1987) ("[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally

---

[4]The Ninth Circuit's line of cases finding a liberty interest existed from the mandatory language of the statute is derived from *Greenholtz*. The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995) modified the mandatory language methodology for finding a protected liberty interest in the context of conditions of confinement and Respondent argues is the methodology that should be applied to the parole context. The Court notes that application of the *Sandin* methodology would lead to the same conclusion as the denial of parole would fall within an "atypical and significant hardship" in light of the fact that parole is the rule rather than the exception. *See In re Smith*, 114 Cal.App.4th 343, 351 (Cal. Ct. App. 2003) (stating, "[u]nder [California Penal Code] section 3041, subdivision (a), release on parole is the rule, rather than the exception"). More importantly, the Ninth Circuit has "since held that *Sandin*'s holding was limited to 'the separate but related question of when due process liberty interests are created by internal prison regulations.' [citation] Accordingly, we continue to apply the 'mandatory language' rule set forth in *Greenholtz* and *Allen* in order to determine whether [the state's] statutory scheme creates a liberty interest in early release into community custody." *Carver v. Lehman*, 558 F.3d 869, 873 n. 5 (9th Cir. 2009) (citing *McQuillion*, 306 F.3d at 902-03 and *Sass*, 461 F.3d at 1127 n. 3 in applying mandatory language rule to find no liberty interest for early release into community under Washington statute).

mandated, even when a protected liberty interest exists); *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, an inmate is at least entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399.  Here, the Court notes that Petitioner does not allege that he was deprived of any of these procedural safeguards.

However, the Supreme Court's decisions in *Greenholtz* and *Hill* compels this Court to the conclusion that Petitioner's denial of parole must also be afforded the protection of having been supported by some evidence in the record.  In *Greenholtz*, 442 U.S. at 12-13, the Supreme Court held that where the language of a state's parole statute creates a statutory expectancy of release, due process requires that a prisoner be 1) afforded an opportunity to be heard; and 2) informed of the reasons for a parole denial.  *Id*. at 15.  Six years after deciding *Greenholtz*, in *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1986), the Supreme Court held that a prison disciplinary board's decision to revoke a prisoner's good time credits must be supported by "some evidence."  In *Hill*, the Supreme Court noted that "[i]n a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence."  *Id.*  Consequently, the Ninth Circuit has consistently held that the "some evidence" standard applies to California parole determinations. *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.  This holding is derived from the Supreme Court's finding that the fundamental purpose of the "some evidence" standard is to prevent arbitrary deprivations of liberty.   *See Hill*, 472 U.S. at 455.  Considering the liberty interest implicated by parole decisions in California is analogous to the liberty interest implicated in *Hill*– i.e., release from prison– and the purpose of the "some evidence" standard, the Ninth Circuit as further concluded that the "some evidence" standard is clearly established federal law for the purpose of AEDPA review.[5]  *See Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Hill*, 472 U.S. at 457); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

---

[5] The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536, (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

1    Respondent's argument that the "some evidence" standard is not clearly established federal

2 law ignores the fact that the Supreme Court routinely applies the some evidence standard to a diverse

3 array of due process questions. *Compare Hill* , 472 U.S. at 455-56 (prison disciplinary hearing) *with*

4 *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957) (denial of admission to bar); *United*

5 *States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927) (deportation); and

6 *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (revocation of probation).   More importantly, "[t]he

7 Supreme Court need not have addressed the identical factual circumstances at issue in a case in order

8 for it to have created 'clearly established' law governing that case...rather, it is enough that the

9 Supreme Court has prescribed a rule that plainly governs the petitioner's claim." *McQuillion v.*

10 *Duncan*, 306 F.3d at 901.   The some evidence standard plainly governs Petitioner's claim, as any

11 lesser standard would permit arbitrary deprivations of Petitioner's liberty interest in parole.  As the

12 Ninth Circuit explained in *Sass*:

13        [The] some evidence standard is minimal, and assures that "the record is not so
         devoid of evidence that the findings of the disciplinary board were without support or
14       otherwise arbitrary." *Hill*, 472 U.S. at 457. Hill held that although this standard might
         be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the
15       Due Process Clause does not require courts to set aside decisions of prison
         administrators that have some basis in fact." *Id.* at 456. To hold that less than the
16       some evidence standard is required would violate clearly established federal law
         because it would mean that a state could interfere with a liberty interest -- that in
17       parole -- without support or in an otherwise arbitrary manner. We therefore reject the
         state's contention that the some evidence standard is not clearly established in the
18       parole context.

19 461 F.3d at 1129.   The Court finds the rationale espoused by the Ninth Circuit in *Irons*, *Sass*, and

20 *Biggs* persuasive on whether the "some evidence" standard is applicable to Petitioner's denial of

21 parole.

22    The inquiry of "whether a state parole board's suitability determination was supported by

23 'some evidence'" is framed by the California statutes and regulations governing parole suitability.

24 *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915.   California law provides that after an eligible life

25 prisoner has served the minimum term of confinement required by statute, the Board "shall set a

26 release date unless it determines that the gravity of the current convicted offense or offenses, or the

27 timing and gravity of current or past convicted offense or offenses, is such that consideration of the

28 public safety requires a more lengthy period of incarceration for" the prisoner.  Cal. Penal Code §

1    3041(b).  "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

2    society if released from prison," the prisoner must be found unsuitable and denied parole.  Cal. Code

3    Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080.  The Board decides

4    whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the

5    California Code of Regulations.  *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852;

6    *Biggs*, 334 F.3d at 915-916.  The regulations permit consideration of "all relevant, reliable

7    information available to the panel," and explicitly calls for consideration of "the base and other

8    commitment offenses, including behavior before, during and after the crime."  Cal. Code Regs., tit.

9    15, § 2402(b).  Factors supporting a finding of unsuitability for parole include: the underlying

10   offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to

11   incarceration for the underlying offense, of violence; a history of unstable relationships with others;

12   and serious misconduct while incarcerated.  Cal. Code Regs., tit. 15, § 2402 (c); *see also In re*

13   *Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

14           Here, Petitioner contends that his due process rights were violated as the Board relied

15   primarily on his commitment offense.   Petitioner additionally argues that even if the Board's

16   reliance on his commitment offense was permissible, his offense was not committed in such a

17   manner as to fall within the California regulations and is therefore not probative of his current

18   dangerousness.  The Los Angeles Superior Court rejected that argument, finding that sole reliance on

19   the commitment offense was permissible and that Petitioner's offense was particularly egregious

20   such that it was probative of Petitioner's current dangerousness.  Thus, the Court is confronted with

21   two questions: (1) whether the Los Angeles Superior Court's decision was unreasonable in finding

22   that it was permissible to rely solely on the commitment offense; and (2) whether it was

23   unreasonable to conclude that *Petitioner's* commitment offense was probative of his current

24   dangerousness.

25           The California Supreme Court has held that even where the commitment offense was

26   particularly egregious, reliance on this immutable factor *may* violate a petitioner's due process rights.

27   *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).  In *Lawrence*, the California Supreme Court

28   found that the intervening twenty-four years in which petitioner, now age sixty-one, had

1  demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances

2  that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her

3  realistic parole plans, the support of her family, and numerous institutional reports justifying parole"

4  rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer

5  probative of "her current threat to public safety, and thus provides no support for the Governor's

6  conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226.  However,

7  Petitioner's case is materially distinguishable from *Lawrence* under Ninth Circuit law.   While

8  Petitioner's denial of parole stems from immutable factors similar to *Lawrence*, the *Lawrence* court

9  had been confronted with a denial of parole stemming from a thirty-six year old commitment

10  offense.  Here, Petitioner was received into custody of the California Department of Corrections on

11  June 16th, 1987.  (Pet. Ex. 1 at 1).  The Court assumes that Petitioner was incarcerated and receives

12  credit for the entire period spanning from August 27, 1985, when he was arrested; thus, Petitioner

13  will not have served his minimum term of twenty-seven years in 2012.  Unlike in *Lawrence*,

14  Petitioner was denied parole in January 2007, at which time he had only served twenty-one years and

15  six months of his twenty-seven year minimum term.  The Ninth Circuit has found that a parole

16  board's sole reliance on the commitment offense comports with the requirements of due process

17  where the board's determination of unsuitability came prior to the prisoner serving the minimum

18  number of years required by his sentence.  *Irons*, 505 F.3d at 853.  The *Irons* court specifically stated

19  that:

20        We note that in all the cases in which we have held that a parole board's decision to
          deem a prisoner unsuitable for parole solely on the basis of his commitment offense
21        comports with due process, *the decision was made beore the inmate had served the
          minimum number of years required by his sentence*...All we held in those cases and
22        all we hold today, therefore, is that, given the particular circumstances of the offenses
          in these cases, *due process was not violated when these prisoners were deemed
23        unsuitable for parole prior to the expiration of their minimum terms*.

24  *Id*.  (emphasis added); *see also Sass*, 469 F.3d at 1129.

25        The "rational nexus" between Petitioner's commitment offense and Petitioner's current

26  dangerousness, *Lawrence*, 44 Cal.4th at 1210, 1213, 1227, is not as attenuated where the petitioner

27  has yet to serve his full sentence.  Thus, the Board's reliance on the commitment offense here does

28  not constitute a violation of Petitioner's due process rights as the denial of parole came before

1   Petitioner served the minimum number of years required by his sentence.  *See Paddock v. Mendoza-*

2   *Powers*, __F.Supp.2d__, No. SACV 07-1247-JVS (RC), 2009 WL 4730595 *6 (C.D. Cal. Dec. 2,

3   2009) (citing *Irons* and *Sass* for the proposition that, "[e]ven if this were the only evidence the Board

4   had supporting its determination to deny petitioner parole, petitioner would not have been deprived

5   of due process of the law by the Board because petitioner 'had not served the minimum number of

6   years to which [he] had been sentenced at the time of the challenged parole denial by the Board'").

7   Thus, the Court finds that it was not unreasonable for the Los Angeles Superior Court to conclude

8   that sole reliance on the commitment offense was permissible as Petitioner had yet to serve his

9   minimum term of twenty-seven years.

10          However, the fact that reliance on the commitment offense was permissible does not answer

11  whether Petitioner's commitment offense was probative of his current dangerousness.  The Superior

12  Court noted that the Board relied on two factors to find that there was some evidence Petitioner

13  posed an unreasonable risk of danger to the public–namely, the commitment offense and a lack of

14  viable parole plans.[6]  After finding that the Board's findings with regards to the parole plans was

15  erroneous, the Superior Court concluded that reliance on the commitment offense was sufficient by

16  itself to constitute evidence that Petitioner posed an unreasonable risk of danger to society.

17  California law lists as a "circumstance tending to show unsuitability," the fact that "[t]he prisoner

18  committed the offense in an especially heinous, atrocious or cruel manner."  Cal. Code Regs., tit. 15,

19  § 2402(c)(1).[7]  The Los Angeles County Superior Court found that the Board's application of section

20  2402(c)(1) to Petitioner's case was appropriate, noting that there was evidence the commitment

21  offense was carried out in a dispassionate and calculated manner.  (Pet. Ex. 14 at 1).  The Superior

22

23          [6]The Superior Court erroneously concluded that the Board based its decision only on the lack of viable parole plans
24  and the commitment offense.  As discussed, *supra*, the Board also relied on a lack of remorse and a failure to deal with the
causative factors of the crime.

25          [7]Among the factors to be considered in whether the prisoner committed the offense in an especially heinous,
26  atrocious, or cruel manner are: (A) Multiple victims were attacked, injured or killed in the same or separate incidents; (B)
The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) The victim was
27  abused, defiled or mutilated during or after the offense; (D) The offense was carried out in a manner which demonstrates an
exceptionally callous disregard for human suffering; (E) The motive for the crime is inexplicable or very trivial in relation
28  to the offense.  Cal. Code Regs., tit. 15, § 2402(c)(1)(A)-(E).

1  Court recited the following facts in support of this proposition, "[t]he Petitioner was angry about the

2  support payments and took a weapon to the victim's home, where he shot her.  In addition, the

3  motive for the crime was very trivial in relation to the offense."  (Id. at 1-2) (citation omitted).

4      The Court finds the sole reliance on Petitioner's crime to be unreasonable as Petitioner's

5  commitment offense by itself does not evidence current dangerousness.  *In re Lawrence*, 44 Cal.4th

6  at 1221 (stating that the inquiry is, "whether the circumstances of the commitment offense, when

7  considered in light of other facts in the record, are such that they continue to be predictive of current

8  dangerousness many years after commission of the offense").   However, "[c]ircumstances which

9  taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results

10 in a finding of unsuitability."  Cal. Code Regs., tit. 15, § 2402(b).   Here, Petitioner's crime must also

11 be viewed in light of his failure to appreciate the causative factors of the crime and his minimization

12 of his actions.  As noted by the Board, "[Petitioner] indicated remorse for everyone except Maxine

13 and you have not shown insight into the commission of the crime.  Saying it was stress ignores

14 dealing with the fact that you were trying to eliminate what you considered a financial drain.  You

15 have not dealt with this in an appropriate way of dealing with answer.  It is clear to this Panel you

16 still have significant anger issues."  (Pet. Ex. 1 at 74).  The Board's finding that Petitioner failed to

17 show insight into the crime is evidenced by Petitioner's continued insistent that the only motivating

18 factors for the crime was the long term stress he had been experiencing and physical exhaustion (Pet.

19 Ex. 1 at 38-39).  Petitioner further failed to see that he had any responsibility in causing the stress he

20 suffered; rather, Petitioner attributed such conditions to outside forces, such as the court for

21 threatening him with jail for failing to keep current on his alimony payments, (Pet. Ex. 1 at 18).

22 Petitioner's lack of remorse and minimization of his crime are evidenced by Petitioner's failure to

23 comprehend that having killed his ex-wife affected the Board's assessment of his "fine character."

24 (Pet. Ex. 1 at 61-65).  In sum Petitioner's failure to appreciate that he, and not environmental factors,

25 caused Petitioner's actions demonstrates that he does not understand the motivating factors of his

26 crime.  Further, Petitioner's vehement insistence that having killed his ex wife does not bear on his

27 "fine character," supports a finding that Petitioner continues to minimize his actions.  Here,

28 Petitioner's crime combined with Petitioner's failure to appreciate the causative factors and

1   minimization of his crime evince that he has yet to fully rehabilitate and may relapse.  Thus, these

2   two factors bare a rational nexus to Petitioner's current dangerousness and the Board's denial is

3   supported by some evidence of current dangerousness.  *See In re Shaputis*, 44 Cal.4th at 1260

4   (stating that "[t]he record establishes, moreover, that although petitioner has stated that his conduct

5   was "wrong," and feels some remorse for the crime, he has failed to gain insight or understanding

6   into either his violent conduct or his commission of the commitment offense" could constitute some

7   evidence of current dangerousness).

8           **B.      Individualized Consideration**

9           In his fifth claim for relief, Petitioner contends that the Board failed to give individualized

10  consideration to his case by failing to give more weight to evidence of suitability such as Petitioner's

11  numerous psychological evaluations.  Petitioner contends that such actions violate his right to due

12  process of the law.

13          Petitioner's contention that the Board failed to give his case individual consideration fails as

14  the record amply demonstrates that the Board considered factors supporting parole, such as

15  Petitioner's disciplinary record, his work reports, his completion of educational courses, and his

16  favorable psychological evaluations, (Pet. Ex. 1 at 31, 37, 45-47) but ultimately concluded that the

17  factors against parole weighed more heavily.  Petitioner's argument that the Board failed to give

18  sufficient weight to his psychological evaluations does not provide a basis for habeas relief as the

19  "some evidence" standard does not permit the court to reweigh the evidence and the Board's opinion

20  as to the significance of the evidence.  *See Hill*, 472 U.S. at 455 (finding that in determining whether

21  the some evidence standard is met, the reviewing court need not examine the entire record,

22  independently assess the credibility of witnesses, or re-weigh the evidence).  Thus the Court may not

23  re-weigh the consideration the Board gave to the psychological evaluations.

24                          **RECOMMENDATION**

25          Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

26  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

27  Respondent.

28  \\\

1        This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

2   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

3   of the Local Rules of Practice for the United States District Court, Eastern District of California.

4   Within thirty (30) days after being served with a copy, any party may file written objections with the

5   court and serve a copy on all parties.  Such a document should be captioned "Objections to

6   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

7   filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

8   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

9   parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11

12  IT IS SO ORDERED.

13  **Dated:     January 28, 2010**          **/s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE

14